UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES HESTER,

    *Plaintiff*,

v.

ALEJANDRO N. MAYORKAS, *et al.*,

    *Defendants.*

No. 21-cv-639 (DLF)

**MEMORANDUM OPINION**

    Following his termination from the Department of Homeland Security's Transportation Security Administration (TSA), plaintiff Charles Hester brought this action against more than forty current and former government employees. *See* Compl. ¶ 1, Dkt. 1. Before the Court is the defendants' Motion to Dismiss, Dkt. 23. For the reasons that follow, the Court will grant the motion.

**I.    BACKGROUND**

    In 2015 and 2016, Hester was employed as a Lead Transportation Security Officer at the Northwest Florida Beaches International Airport in Panama City Beach, Florida. Compl. ¶ 1.[1] He alleges that during those years, he was the subject of three frivolous investigations and other harassment by TSA management. *Id.*

    First, in 2015, Kimberly Serrano asked supervisor Paul Farnan to investigate a "minor procedural violation" involving Hester. *Id.* ¶ 5. In their report, Serrano and fellow employee Darrell Nowell recommended that Hester be suspended for fourteen days and allegedly made false

---

[1] On a Rule 12(b)(6) motion, the Court assumes the truth of material factual allegations in the complaint. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

statements that negatively impacted Hester's mid-year performance evaluation scores. *Id.* ¶¶ 5, 8–11, 13, 36. Assistant Federal Security Director Eric Fisher did not suspend Hester but did issue him a Letter of Reprimand, while other employees who committed similar procedural violations were not disciplined. *Id.* ¶¶ 5, 17.

Second, later that year, Nowell and supervisor Timothy Justice directed Hester to carry out a supervisory task, and Hester refused on the grounds that he was not obligated to perform it. *Id.* ¶ 21. Hester asked coworker Royce Bailey to write a statement in his support, but Bailey allegedly changed his statement at Justice's direction. *Id.* ¶ 22. Justice then wrote a report accusing Hester of failure to perform work duties, leading to another allegedly fraudulent investigation. *Id.* ¶¶ 26, 30–31, 43. Hester's superiors again recommended a fourteen-day suspension, which was this time approved and upheld on appeal. *Id.* ¶¶ 33, 44, 49.

Third, a final allegedly fraudulent investigation was led by Thomas Guglielmo in 2016. *Id.* ¶¶ 50–53. The investigation resulted in Justice recommending that Hester be terminated. *Id.* ¶ 54. Fisher accepted that proposal, and Hester was removed from federal service on January 20, 2017. *Id.* ¶¶ 55–56.

Throughout this time period, Hester alleges ongoing harassment by fellow TSA employees. For example, he states that Justice publicly accused him of taking too many bathroom breaks, forced him into a closed-door meeting without any witnesses, and improperly denied his sick leave requests. *Id.* ¶¶ 14, 18–19, 67. Hester reported the harassment and fraudulent investigations to TSA management; when he received no response, he elevated his complaints to several other TSA officials and individuals at the Department of Homeland Security (DHS) Office of Inspector General, none of whom took action. *Id.* ¶¶ 27–29, 38–39, 47, 87, 90–91. Hester then took his

complaints to the U.S. Office of Special Counsel (OSC), but he alleges that the OSC improperly withheld records of its investigation when Hester refused to present identification. *Id.* ¶¶ 75–77.

Finally, Hester filed two informal complaints with the Equal Employment Opportunity Commission (EEOC) in December 2015 and February 2016. *Id.* ¶¶ 15, 35. As to his first complaint, Hester alleges that EEOC case managers and counselors improperly extended the counseling period without notifying him, delayed contacting TSA management, and delayed issuing Hester's Notice of Right to File a formal EEO complaint. *Id.* ¶¶ 15, 32, 34. As to the second, Hester alleges that EEOC employees inordinately delayed his initial interview and falsely claimed that he had agreed to traditional counseling, despite his request for alternative dispute resolution. *Id.* ¶¶ 41–42. Hester subsequently filed a formal EEO complaint on June 10, 2016. *Id.* ¶ 69. During the ensuing investigation, Hester alleges that TSA employees made false statements and that adjudication was delayed because the EEOC case manager sent his files to the wrong office. *Id.* ¶¶ 57–61, 67–69. His complaint therefore sat idle for fifteen months until an Administrative Law Judge (ALJ) transferred the case. *Id.* ¶¶ 69, 73. On April 25, 2019, an ALJ issued a decision in favor of the agency, and DHS implemented that decision as its final agency decision. *Id.* ¶¶ 81, 84. Hester appealed to the EEOC's Office of Federal Operations, which affirmed the ALJ's decision on June 16, 2020, *see id.* ¶ 93; Def.'s Mot. to Dismiss Ex. A (EEOC Decision), Dkt. 23-1, and denied Hester's motion to reconsider on November 23, 2020, Compl. ¶ 97; Def.'s Mot. to Dismiss Ex. B (EEOC Decision on Request for Reconsideration), Dkt. 23-2.[2]

Proceeding *pro se*, Hester filed this suit on March 8, 2021. He brings eighty-one claims against employees of DHS, TSA, and EEOC in their personal and official capacities for violations

---

[2] "In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018).

of agency policy, regulations, statutes (including FOIA and Title VII), and the Constitution. On October 13, 2021, the defendants moved to dismiss the complaint under, among other things, Federal Rule of Civil Procedure 12(b)(6). Dkt. 23.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff need not plead "detailed factual allegations," he must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *Iqbal*, 556 U.S. at 679, and the plaintiff receives "the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). When a plaintiff proceeds *pro se*, the Court must consider the complaint "in light of all filings, including filings responsive to a motion to dismiss." *Johnson*, 927 F.3d at 541 (quotation marks omitted). While a *pro se* complaint is entitled to a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the assumption of truth does not extend to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

### III.     ANALYSIS

Hester's complaint alleges violations of agency policies, an Executive Order, regulations, statutes (including various criminal statutes, FOIA, and Title VII), and the Constitution (including the First, Fourth, and Fifth Amendments). Most of these counts will be dismissed for failure to state a claim upon which relief can be granted because they lack a private cause of action. The Court will address Title VII separately.

#### A.     Counts that lack a private cause of action

"[A]bsent a viable cause of action, the court must dismiss for failure to state a claim." *Bauer v. Marmara*, 942 F. Supp. 2d 31, 37 (D.D.C. 2013), *aff'd*, 774 F.3d 1026 (D.C. Cir. 2014). "Like substantive law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001). "The judicial task is to interpret [a] statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.*

Under this basic test, Hester's claims for violations of agency policies, codes of conduct, and ethics regulations fail to state a claim for relief. *See* Compl. ¶¶ 3, 5–8, 10, 18, 27, 29, 31, 37, 41, 43, 46, 52, 56, 58, 108 (citing various TSA and DHS handbooks and management directives); *id.* ¶¶ 5–9, 26, 39 (citing 5 C.F.R. § 2635.101). Agency rules and regulations cannot provide a cause of action absent one in a statute. *Sandoval*, 532 U.S. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). And there is no reason to think that the policies and regulation Hester cites were at all intended to describe any judicial remedy. *See, e.g.*, TSA Handbook to MD 1100.73-3 App'x B, Dkt. 23-4 (laying out internal procedures for handling violations); DHS MD

5

0480.1 at 5, Dkt. 23-5 (same);[3] *United States v. Safavian*, 528 F.3d 957, 964 (D.C. Cir. 2008) (explaining that violations of 5 C.F.R. § 2635.101 may result in "disciplinary action" but not liability). Therefore, neither the agency policies nor the regulation provide Hester with a cause of action. *See Roberts v. Cameron–Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977) (holding that a HUD handbook provided no private cause of action); *Jud. Watch, Inc. v. Clinton*, 880 F. Supp. 1, 5 n.3 (D.D.C. 1995) (holding that 5 C.F.R. § 2635.101 provides no private cause of action).

The same is true for the three claims under Executive Order 12674. *See* Compl. ¶¶ 6–9. "As a general rule, 'there is no private right of action to enforce obligations imposed on executive branch officials by executive orders.'" *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995) (quoting *Facchiano Constr. Co. v. Dep't of Labor*, 987 F.2d 206, 210 (3d Cir. 1993)). Executive Order 12674 sets forth "[p]rinciples of [e]thical [c]onduct" for government employees, but does not purport to create any private rights. 54 Fed. Reg. 15159, 15162. It therefore did not create a cause of action. *See Meyer v. Bush*, 981 F.2d 1288, 1290, 1296 n.8 (D.C. Cir. 1993) (explaining that an Executive Order "not intend[ing] to create any right or benefit" was not judicially enforceable); *Scherer v. United States*, 241 F. Supp. 2d 1270, 1285 (D. Kan. 2003) (holding that Executive Order 12674 did not create a private right of action), *aff'd*, 78 F. App'x 687 (10th Cir. 2003).

Two other claims, though they do invoke statutes, cannot escape the same fate. *See* Compl. ¶¶ 28, 65. Whether a statute creates a private right of action is a question of "Congress's intent" as evidenced by "text and structure." *Sandoval*, 532 U.S. at 288. Hester cites two statutes organizing the TSA: one requiring the Administrator to "enforce security-related regulations and

---

[3] Because Hester's complaint necessarily relies on these policy documents, the Court may consider them when deciding a Rule 12(b)(6) motion. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

requirements," 49 U.S.C. § 114(f)(7), and one establishing the Federal Security Director position, *id.* § 44933(a).  Neither includes an express private right of action.  *See Ivyport Logistical Servs., Inc. v. Caribbean Airport Facilities, Inc.*, 502 F. Supp. 2d 227, 230 (D.P.R. 2007) (finding no "private cause of action in [§ 114]").  And there is no reason to think that Congress meant to "confer rights on a particular class of persons" such that the statutes imply private remedies.  *Sandoval*, 532 U.S. at 289.  Therefore, all of the above claims will be dismissed against all defendants for failure to state a claim.

Finally, Hester brings fifty-one claims alleging that TSA, DHS, EEOC, and OSC employees violated the Constitution in various disciplinary, investigative, and EEOC proceedings.  Though an implied cause of action for constitutional violations does exist in limited circumstances, *see Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), there is not one here.  "[I]t is well-established that the Court should not imply a *Bivens* remedy in an employment case." *Bozgoz v. James*, No. 19-0239, 2020 WL 4732085, at *9 (D.D.C. Aug. 14, 2020).  *Bivens* does not provide an implied cause of action if "special factors counsel[] hesitation," and "[o]ne 'special factor' that precludes creation of a *Bivens* remedy is the existence of a comprehensive remedial scheme." *Wilson v. Libby*, 535 F.3d 697, 705 (D.C. Cir. 2008).  Federal civil service laws are such a comprehensive remedial scheme. *Id.* (citing *Bush v. Lucas*, 462 U.S. 367, 388–90 (1983)).

Hester's constitutional claims are based on alleged misrepresentations during disciplinary investigations and EEOC proceedings, *see* Compl. ¶¶ 11, 13, 19, 64, 85, 104 (First Amendment); denial of sick leave, *see id.* ¶ 14, 79 (Fourth Amendment); lack of due process and bias in disciplinary and EEOC proceedings, *see id.* ¶¶ 12, 17, 20, 30, 32–35, 40, 42, 44, 47–51, 53–55, 59–63, 66–74, 80–84, 86–91, 96, 101, 105 (Fifth Amendment); and forced acceptance of a new job task, *see id.* ¶¶ 25, 106 (Thirteenth Amendment).  These types of employment disputes are

addressed by Title VII, which "proscribes federal employment discrimination and establishes an administrative and judicial enforcement system," *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976), and the Civil Service Reform Act, which provides a "comprehensive system for reviewing personnel action taken against federal employees," *United States v. Fausto*, 484 U.S. 439, 455 (1988).  Therefore, the Court will not infer a constitutional cause of action.  *Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (en banc) (no constitutional cause of action for personnel actions addressed by the CSRA); *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985) (no constitutional cause of action for employment discrimination "actionable under Title VII").  For the same reason, the Court will also dismiss the claim brought under 42 U.S.C. § 1985.  *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) (holding that § 1985 "may not be invoked to redress violations of Title VII").  To the extent any of these claims are viable, the Court will address them under Title VII.  *See infra* Part III.C.

      **B.**    **Counts that fail to plausibly allege a violation of statute**

Three of Hester's claims invoke criminal statutes prohibiting forced labor.  Compl. ¶¶ 21–24 (citing 18 U.S.C. §§ 1589, 1594).  The forced labor statute does create a civil remedy for violations, *see* 18 U.S.C. § 1595, but the Court will dismiss these counts against all defendants for failure to state a claim.  To prevail under § 1589, the plaintiff must show that he was forced to provide labor or services by means of "force," "physical restraint," "serious harm," "the abuse . . . of law or legal process," or the threat of any of those.  *Id.* § 1589(a); *see also id.* § 1594 (adding conspiracy and attempt liability).  Hester does not claim that anyone at TSA ever threatened him physically.  He alleges only that "Justice and Nowell threatened [him] with disciplinary action for refusing to comply with their demands" to perform an unspecified task at work.  Compl. ¶ 21.  Those allegations do not plausibly amount to a threat of serious harm or abuse of law.  Absent

extenuating circumstances, "disciplinary action" in general is exceedingly normal in the employment context—and cannot plausibly be considered "sufficiently serious[] under all the surrounding circumstances" to constitute "serious harm," 18 U.S.C. § 1589(c)(2), or beyond the "purpose for which the law was . . . designed" so as to constitute "abuse of law," *id.* § 1589(c)(1). Hester does not allege any details about the discipline, much less that it was especially severe, coercive, or unlawful. Thus, his "[t]hreadbare" accusation, "supported by mere conclusory statements," does not suffice to state a claim for criminal forced labor. *Iqbal*, 556 U.S. at 678.

Finally, Hester brings a claim under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, against four individual OSC employees. *See* Compl. ¶ 78. As an initial matter, Hester has named improper defendants, as FOIA authorizes claims only against agencies. *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam). Even if the Court were to substitute the OSC as the defendant, Hester would still fail to state a claim. It is apparent from the face of the complaint that Hester failed to exhaust his administrative remedies, as he must before he may bring suit. *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). Before fulfilling Hester's request for records, OSC asked him to provide proof of identity as required by 5 C.F.R. § 1830.2(c)—and he did not do so. Compl. ¶ 75. Hester does not dispute that he failed to provide proof of identity; rather, he argues that 5 C.F.R. § 1830.2(c) did not apply to him, because he submitted his FOIA request by email. Pl.'s Resp. at 8–15, Dkt. 25. That argument is not persuasive. According to the regulation, OSC record requests may be "sent by mail or by fax, or delivered in person," 5 C.F.R. § 1830.2(a), and "[r]equests received by mail, fax, or personal delivery should" include proof of identity, *id.* § 1830.2(c). Though the regulation does not list email separately, it plainly requires proof of identification no matter the method of submitting a request. Because Hester failed to comply with agency regulations in submitting his FOIA request, his FOIA claim is dismissed. *See*

9

*Banks v. DOJ*, 538 F. Supp. 2d 228, 234 (D.D.C. 2008) (dismissing FOIA suit for failure to comply with regulation requiring proof of identification).

### C. Title VII claim

At bottom, the complaint centers on an employment dispute, termination, and EEOC Title VII proceedings. While the complaint does not actually invoke the Title VII cause of action to challenge those things, it does reference the statute creating the EEOC, *see* Compl. ¶ 103 (citing 42 U.S.C. § 2000e-4(a)), EEOC implementing regulations, *id.* ¶¶ 16, 93, 100 (citing 29 C.F.R. § 1614.105, 405), and numerous constitutional challenges to the EEOC process, *see, e.g.*, *id.* ¶ 59–61. The Court liberally construes the claim as rooted in Title VII's civil cause of action for an employee "aggrieved by the final disposition of his [EEOC] complaint." 42 U.S.C. § 2000e-16(c).

To the extent that Hester challenges EEOC officials' performance of their duties, those claims will be dismissed. *See, e.g.*, Compl. ¶ 16 (alleging that EEOC employees improperly extended his counseling period); *id.* ¶ 103 (alleging that EEOC officials failed to "exercise the appropriate level of responsibility"). "Congress has not authorized, either expressly or impliedly, a cause of action against the EEOC for the EEOC's alleged negligence or other malfeasance in processing an employment discrimination charge." *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997). Indeed, nearly all of Hester's Title VII claims are brought against EEOC officials, which is not permitted under Title VII. *See* 42 U.S.C. § 2000e-16(c) (stating that "the head of the department, agency, or unit" where the complainant was employed is the only proper defendant); *Bagenstose v. District of Columbia*, 503 F. Supp. 2d 247, 255 (D.D.C. 2007) (dismissing suit against the EEOC for its role in processing a complaint). Hester's constitutional challenges to the EEOC's processes under the Fifth Amendment Due Process Clause fail for a similar reason: "EEOC determinations are both non-final and non-binding," so "they may not be challenged under

the . . . Due Process Clause." *Harris v. McDonald*, No. 17-594, 2017 WL 4217101, at *6 (D.D.C. Sept. 19, 2017) (collecting cases). Hester's general "dissatisfaction" with the EEOC process "lacks a cause of action." *Id.* The Court will thus dismiss all Title VII claims against all defendants except "the 'head of the department, agency, or unit' in which the allegedly discriminatory acts transpired." *Hackley v. Roudebush*, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975).[4]

The remaining claim, construed in the most liberal light possible, seeks judicial review of the EEOC's final decision and denial of request for consideration. *See* Compl. ¶¶ 93, 100. Any such claim is time-barred. Title VII allows a complainant to bring suit "within 90 days of receipt of notice of final action taken by a department, agency, or unit . . . or by the [EEOC] upon an appeal from a decision." 42 U.S.C. § 2000e-16(c); *see also Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (explaining that Title VII's administrative deadlines "function like a statute of limitations"). "Courts apply the ninety-day time limit strictly and will dismiss a suit for missing the deadline by even one day." *McAlister v. Potter*, 733 F. Supp. 2d 134, 142 (D.D.C. 2010) (collecting cases). The EEOC issued its final decision denying Hester's request for reconsideration on November 23, 2020. Decision on Request for Reconsideration at 4–5. To account for mailing time, "[c]ourts routinely apply a three-to-five-day presumptive notice period" following the issuance of a decision. *Nkengfack v. Am. Ass'n of Retired Persons*, 818 F. Supp. 2d 178, 181 (D.D.C. 2011). Thus, February 26, 2021 was Hester's last opportunity to file suit. He did not do so until March 8, 2021. *See* Civil Cover Sheet, Dkt. 1-1. Though Title VII's statutory deadline is "subject to waiver, estoppel, and equitable tolling," *Brown*, 777 F.2d at 14 (quotation marks

---

[4] The remaining defendants are DHS Secretary Alejandro Mayorkas and TSA Administrator David Pekoske, substituted for the former Administrator under Rule 25(d), in their official capacities.

11

omitted), Hester has provided the Court with no reason to toll it here,[5] and the Court cannot discern one. Thus, any challenge to the EEOC's final decision is time-barred, and the claim will be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss is granted. A separate order consistent with this decision accompanies this memorandum opinion.

September 26, 2022

DABNEY L. FRIEDRICH
United States District Judge

---

[5] Instead, Hester argues that the statutory limitations period was never triggered because the EEOC never issued a final decision—the EEOC decisions in the record, he says, are "fraudulent document[s]" issued by officers "in [their] individual capacity." Pl.'s Resp. at 7, 28–29. There is no support whatsoever for that claim. The EEOC decision is complete, thorough, and signed by EEOC officers in their official capacity; it states that "[t]his decision of the Commission is final"; and it informs him of his right to file a civil suit. Decision on Request for Reconsideration at 3.